UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**UNITED STATES OF AMERICA,**

   Plaintiff,

v.                                                            No. 4:24-cr-062-P-1

**DWAYNE LAMONICA FORD (01),**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion to Dismiss the Indictment. ECF No. 24. Having considered the Motion and applicable law, the Court determines the Motion should be and hereby is **DENIED**.

## BACKGROUND

On January 17, 2024, Dwayne Lamonica Ford was arrested. On March 13, a criminal indictment was filed against him by the Government, alleging one count of possession of a firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(l) and 924(e)(1)).

Mr. Ford filed a Motion to Dismiss the Indictment on April 5, 2024. The Court now reviews that Motion to Dismiss.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) ("A pretrial dismissal is essentially a determination that, as a

matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

## ANALYSIS

### 1. Commerce Clause Argument

Ford first argues that Section 922(g)(1) exceeds Congress's enumerated powers under the Commerce Clause. *See* ECF No. 24 at 2–6. However, this argument has been foreclosed in the Fifth Circuit. *See United States v. Jones,* 88 F.4th 571, 573 (5th Cir. 2023) (holding that Commerce Clause challenges to § 922(g)(1) are foreclosed).

### 2. § 922(g)(1) is Constitutional

In *District of Columbia v. Heller*, the Supreme Court held the Second Amendment protects the right of law-abiding, responsible citizens to use arms in defense of hearth and home. 554 U.S. 570, 635, (2008). In so doing, the *Heller* Court rejected earlier interpretations of the Second Amendment which limited its application to militia members, finding the Second Amendment guarantees an individual's right to keep and bear arms, unconnected to militia service. *See id.* at 592. The Court reached its conclusion by employing a textual analysis, informed by history. *See Id.* at 576–577. Two years later, in *McDonald v. Chicago*, the Supreme Court held the Second Amendment applies to the states through the Fourteenth Amendment. 561 U.S. 742, 767 (2010). Most recently, *Bruen* struck down a New York law requiring applicants to demonstrate a "special need" for a concealed carry license, finding it to be an impermissible restriction on the Second Amendment's protection of an "individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8–11 (2022).

Post-*Heller*, the Fifth Circuit applied a two-step inquiry for assessing the constitutionality of firearms restrictions. First, courts would determine whether the regulation fell within the scope of the Second

Amendment right, looking to the text and historical tradition to inform their analysis. *See United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020). If the regulation was outside the scope of the Second Amendment, then the law was constitutional. *See id.* If it was inside the scope of the Second Amendment, courts would apply means-end scrutiny to assess its constitutionality. *See id.* In *Bruen*, the Supreme Court declared the two-step inquiry to be "one step too many." 597 U.S. 1 at 2. The *Bruen* Court indicated its earlier rulings do not support applying means-end scrutiny, but only "a test rooted in the Second Amendment's text, as informed by history." *Id.*

In the wake of the *Bruen* decision, defendants across the country are challenging the constitutionality of federal firearms offenses codified in 18 U.S.C. § 922. Challengers argue the law's recent interpretation makes it suspect under *Bruen's* text-and-history analysis. Indeed, the Federal Firearms Act was first enacted in 1938, making it relatively modern in comparison to the founding-era historical analysis required by *Bruen*. *See* 597 U.S. 1 at 27–28. Here, Ford challenges the constitutionality of federal law criminalizing possession under § 922(g)(1). The Court considers his challenge below.

This Court is keenly aware of a recent decision by the Fifth Circuit holding that 18 U.S.C. § 922(g)(8)—prohibiting the possession of a firearm by the subject of a domestic violence restraining order—is no longer constitutional under *Bruen*. *United States v. Rahimi*, 61 F.4th 443, 460 (5th Cir. 2023), *cert. granted*. But § 922(g)(8) prohibits firearm possession by a class of persons subject to a court order but not yet convicted of a felony. So, *Rahimi* dealt with a firearms prohibition applied to a different subclass of individuals with different legal interests in its crosshairs. The issue here, however, is whether it is constitutional to prohibit already-convicted felons from possessing firearms.

Under *Bruen*, the Court first asks whether the "Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. 1 at 17. For § 922(g)(1), the key question at this step is whether the Second Amendment's reference to "the people" includes felons. *Compare, e.g.,*

*United States v. Hill*, 2022 WL 17069855, at *4–5 (S.D. Tex. Nov. 17, 2022) ("[F]elon-in-possession statutes fail at the first step of the *Bruen* test—i.e., felons do not fall within the 'plain text' of the Second Amendment."), with *United States v. Coombes*, 629 F.Supp.3d 1149, 1156 (N.D. Okla. 2022) ("[I]t is clear that convicted felons fall within "the people" as contemplated by the First and Fourth Amendments. The Court ultimately concludes that although *Rahimi* provides a potential basis for excluding "felons" from "the people," case law and practical anomalies advise against such a conclusion. Specifically, in wrestling with *Heller* and *Bruen's* reference to "law-abiding, responsible citizens," the Fifth Circuit noted the different analytical approaches to the Second Amendment:

> "[O]ne [approach] uses history and tradition to identify the scope of the right, and the other uses that same body of evidence to identify the scope of the legislature's power to take it away." *Kanter*, 919 F.3d at 452 (Barrett, J., dissenting). The Government's argument that Rahimi falls outside the community covered by the Second Amendment rests on the first approach. But it runs headlong into *Heller* and *Bruen*, which we read to espouse the second one.

*Rahimi*, 61 F.4th 443, 451–52.

The United States has a long history of categorically restricting the possession or ownership of firearms, spanning from its colonial era through present day. *See* Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 LAW & CONTEMP. PROBS. 55 (2017) (examining the history and development of U.S. gun laws and regulations by category). Some estimates indicate that there were no fewer than eleven laws among the colonies—predating the ratification of the Constitution—regulating or prohibiting the possession of firearms by convicted felons, other "criminals," or non-citizens. *Id*. at 60. This history of allowing only those citizens who are "law-abiding" to own or possess firearms is what the Court in *Heller* and *Bruen* left undisturbed. *See Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."); *Bruen*, 597 U.S. 1 at 81 (Alito, J.,

4

concurring) ("Our holding decides nothing about who may lawfully possess a firearm ... [n]or have we disturbed anything that we said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns.").

This holding is consistent with case law in the Fifth Circuit with respect to felons. *United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. Jordan*, Case No. EP-22-CR-01140-DCG-1, 2023 WL 157789 (W.D. Tex. Jan. 11, 2023) (citing *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004)). *Bruen* did not change that fundamental premise. This Court is bound by Fifth Circuit precedent and is "'not free to overturn' the Fifth Circuit's pre-*Bruen* decisions upholding Section 922(g)(1)." *Jordan*, 2023 WL 157789, at *7 (quoting *In re Bonvillian Marine Service, Inc.*, 19 F. 4th 787, 789–90 (5th Cir. 2021)). Therefore, this Court need not conduct an exhaustive evaluation of Defendant's Second Amendment argument because this Court remains bound by circuit precedent as to § 922(g)(1). Accordingly, Ford's argument that § 922(g)(1) is unconstitutional also fails.

## CONCLUSION

Because 18 U.S.C. § 922(g)(1) is constitutional under both Congress's Commerce Power and the Second Amendment, Defendant's Motion (ECF No. 24) is **DENIED**.

**SO ORDERED** on this **15th day** of **April 2024**.

*[signature: Mark T. Pittman]*

Mark T. Pittman
UNITED STATED DISTRICT JUDGE